**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **VCI GLOBAL LIMITED,** | |
| **Plaintiff,** | |
| **v.** | **Case No.:** |
| **BOUSTEAD SECURITIES, LLC,** | **COMPLAINT** |
| **Defendant.** | |

Plaintiff VCI Global Limited ("VCI"), by and through its counsel, hereby alleges as follows its complaint against defendant Boustead Securities, LLC ("Boustead") as follows:

### NATURE OF ACTION

1. This is an action to enjoin an arbitration that Boustead brought against VCI before the Financial Industry Regulatory Authority ("FINRA") captioned *Boustead Securities, LLC vs. VCI Global Limited* (FINRA Case No. 24-02657) ("FINRA Arbitration").

2. The claims brought by Boustead against VCI in the FINRA Arbitration are contained in its statement of claim, initially filed with FINRA on December 18, 2024, since amended twice, with the last instance coming on December 31, 2025 ("Statement of Claim"). The Statement of Claim is attached hereto as Exhibit 1.

3. VCI filed its Answer and Affirmative Defenses ("Answer") to the Statement of Claim on February 2, 2026.

4. Boustead's claims against VCI emanate from its role as an underwriter bringing VCI public through an initial public offering ("IPO").  Boustead claims are subject to an exclusive forum

1

selection clause requiring it to bring any disputes with VCI before this Court (or New York Supreme Court, New York County), not before FINRA where it filed its claim.

5.    Boustead relies upon the January 19, 2022, engagement letter ("Engagement Letter") executed by the parties as its basis for filing of the Statement of Claim before FINRA.

6.    The Engagement Letter contemplated Boustead's role as exclusive financial advisor for pre-IPO financings and an IPO for VCI.

7.    Boustead alleges in the Statement of Claim the Engagement Agreement's forum and venue clause requires the filing to be in FINRA.

8.    The Engagement Agreement does not have any such requirement.  To the contrary, paragraph 8 of the Engagement Agreement requires any claim to be filed in federal court in Los Angeles, California, and *only* if that court lacked jurisdiction would the Engagement Agreement permit the dispute to be arbitrated before FINRA, with the hearing to be held in Orange County, California.

9.    On April 13, 2023, the parties entered into a subsequent agreement, an underwriting agreement ("Underwriting Agreement").

10.    The Underwriting Agreement sets forth the parties' rights and obligations for the IPO offering, including fees, warrants, indemnification, conditions, ROFR provisions and termination.

11.    The Underwriting Agreement contained a merger clause, stating that it superseded any other agreements between the parties.

12.    The Underwriting Agreement contains an exclusive forum selection clause that provides that "any legal suit, action or proceeding arising out of or relating to this Agreement and/or the transactions contemplated hereby shall be instituted exclusively in New York Supreme Court, County of New York, or in the United States District Court for the Southern District of New York".

13.    Accordingly, the Court should declare that the parties' dispute is not arbitrable and enjoin the FINRA Arbitration.

**The Parties**

14.    VCI is a corporation that was formed under the laws of British Virgin Islands. Its headquarters is in Kuala Lumpur, Malaysia, with additional offices in Singapore and Hong Kong.

15.    VCI is a global advisory firm that provides expert advice on multiple industries that includes corporate advisory, real estate advisory, digital advisory, project advisory, business advisory and blockchain advisory services. Today VCI is publicly traded on Nasdaq under the ticker, "VCIG."

16.    Boustead is a limited liability company formed under the laws of the State of California, with a principal place of business at 6 Venture, Suite 395, Irvine, California 92618. Boustead is an investment banking firm that provides financial advisory services to clients on mergers and acquisitions, capital raises, and restructuring.

**Jurisdiction and Venue**

17.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Federal Rule of Civil Procedure 57, and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, Boustead seeks through the FINRA Arbitration damages exceeding $6,000,000.00.  Exhibit 1, Exhibit A.

19.    This Court has personal jurisdiction over the parties because each contractually consented to the Court's jurisdiction in the Underwriting Agreement.

20.     Venue is proper in this judicial district because the parties contractually consented to the venue of this judicial district pursuant to the Underwriting Agreement.  Moreover, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the parties agreed the Underwriting Agreement is deemed to have been made and delivered in New York.

### FACTUAL BACKGROUND

21.     VCI engaged Boustead to be its underwriter for VCI's initial public offering.  From an engagement process, there were two agreements executed by the parties.  The first, executed on January 19, 2022, was the Engagement Letter.

22.     The Engagement Letter contemplated Boustead's role as exclusive financial advisor for pre-IPO financings and an IPO.

23.     The Engagement Letter set forth a variety of terms, including Boustead's Right of First Refusal ("ROFR") for any subsequent capital raises by VCI.

24.     As the parties' relationship progressed, on or about April 13, 2023, they entered into a second and controlling agreement, the Underwriting Agreement, for Boustead to act as the underwriter to bring VCI public.

25.     The Underwriting Agreement contained a merger clause that specifically stated the agreement superseded any prior agreements between the parties.

26.     The Underwriting Agreement sets forth the parties' rights and obligations for the IPO offering, including fees, warrants, indemnification, conditions, ROFR provisions and termination.

27.     As to the ROFR issue, Section 10 of the Underwriting Agreement sets forth the contractual obligations of VCI to Boustead for any post-termination transactions, the very transactions which serve as the basis for Boustead's claim against VCI.

> Section 10. Right of First Refusal. The Company hereby grants the Representative
> a right of first refusal ("Right of First Refusal") for two (2) years from the date of

consummation of the Offering or the termination or expiration of the Company's engagement of the Representative, to act as underwriter, placement agent or financial advisor in connection with any public or private financings in the United States (debt or equity, and including self-underwritten offerings), merger, business combination, recapitalization or sale of some or all of the equity or assets of the Company or any of its Subsidiaries out of the ordinary course of business, whether in conjunction with another broker-dealer or on the Company's own volition, (collectively, "Future Services"); *provided, however,* that the Representative shall not be entitled to have such Right of First Refusal if no Offering is consummated. The Company shall notify the Representative in writing of its intention to pursue an activity that would enable the Representative to exercise its Right of First Refusal to provide Future Services. In the event the Company notifies the Representative of its intention to pursue an activity that would enable the Representative to exercise its Right of First Refusal to provide Future Services, the Representative shall notify the Company of its election to provide such Future Services, including notification of the compensation and other terms to which the Representative claims to be entitled, within thirty (30) days of written notice by the Company. In the event the Company engages the Representative to provide such Future Services, the Representative will be compensated consistent with Section 2 of that certain engagement letter between the Company and the Representative, dated January 19, 2022 (as amended, the "Engagement Letter"), unless mutually agreed otherwise by the Company and the Representative. Representative shall be entitled to compensation under Section 2 of the Engagement Letter in the event the Company conducts a Transaction as defined in the Engagement Letter and does not provide notice to Representative of such Transaction pursuant to this Agreement.

28.    The Underwriting Agreement contains a choice of law clause setting New York law as the governing law and provides for exclusive jurisdiction of a court in New York, New York. Id.

29.    As to disputes between the parties that encompass the allegations and causes of action in the Statement of Claim, the relevant section in the governing Underwriting Agreement is Section 14, entitled "Governing Law; Venue; Agent for Service; Waiver of Jury Trial." and it reads:

This Agreement shall be deemed to have been made and delivered in New York and both this Agreement and the transactions contemplated hereby shall be governed as to validity, interpretation, construction, effect and in all other respects by the internal laws of the State of New York, without regard to the conflict of laws principles thereof. Each of the Underwriters and the Company: (i) agrees that any legal suit, action or proceeding arising out of or relating to this Agreement and/or the transactions contemplated hereby shall be instituted exclusively in New York Supreme Court, County of New York, or in the United States District Court for the Southern District of New York, (ii) waives any objection which it may now or

hereafter have to the venue of any such suit, action or proceeding, and (iii) irrevocably consents to the jurisdiction of the New York Supreme Court, County of New York, and the United States District Court for the Southern District of New York in any such suit, action or proceeding.

30.    Section 15 of the Underwriting Agreement clarifies through a merger clause that the Underwriting Agreement supersedes the Engagement Agreement:

This Agreement constitutes the entire agreement of the parties to this Agreement and supersedes all prior written or oral and all contemporaneous oral agreements, understandings and negotiations solely with respect to the subject matters hereof. Notwithstanding anything to the contrary set forth herein, it is understood and agreed by the parties hereto that all other terms and conditions of the Engagement Letter shall remain in full force and effect.

**Boustead Ignores The Forum And Venue Clause In The Engagement Agreement**

31.    Notwithstanding the clear and unambiguous terms of the Underwriting Agreement requiring any filing to be in a court of competent jurisdiction in New York County, Boustead commenced the FINRA Arbitration on December 18, 2024.

32.    From the outset of its filing, Boustead ignored the forum and venue clause in the Engagement Agreement.

33.    If, as Boustead asserts in the FINRA Arbitration, the Engagement Agreement is the governing agreement for the breach of contract claim, then pursuant to that document the *only* forum the agreement permitted the claim to be filed was with the federal court located Los Angeles, California.[1]

34.    **If** the federal court did not have jurisdiction, **only then** did the Engagement Agreement permit any such dispute to be arbitrated before FINRA, with the hearing to be held in Orange County, California.

---

[1] While the Engagement Agreement is not controlling, there can be no dispute that the United States District Court for the Southern District of California would have diversity jurisdiction over the parties, just as this Court has such jurisdiction.

35.    Boustead never filed a claim in the federal court in Los Angeles, California.

**The Parties Engage In Substantial Settlement Discussions**

36.    After the filing of the original arbitration claim with FINRA in December 2024, the parties engaged in settlement discussions.

37.    During that time the parties agreed to adjourn the date VCI had to file an answer to the applicable statement of claim.

38.    During that time frame Boustead filed an amended claim.

39.    The last of the settlement discussions took place in December 2025.

40.    When the settlement discussions failed to resolve the outstanding issues, Boustead filed the Statement of Claim (which is the Second Amended Statement of Claim).

41.    Boustead alleges therein that VCI breached its ROFR obligation to Boustead pursuant to the Engagement Letter, and as a result, damaged Boustead more than $6,000,000.

**Boustead Ignores the Underwriting Agreement**

42.    Boustead's Statement of Claim fails to acknowledge or address the superseding Underwriting Agreement and its merger, forum, venue and choice of law clauses.

43.    On February 2, 2026, VCI filed its answer and affirmative defenses ("Answer") to the Statement of Claim to avoid a default in the FINRA Arbitration.

44.    VCI's Answer expressly objected to the filing of the claim before FINRA and asserted as an affirmative defense FINRA does not have jurisdiction over VCI based upon the Underwriting Agreement.

45.    After the filing of the Answer, no action has taken place in the FINRA Arbitration.

46.    On April 17, 2026, FINRA held a pre-hearing conference Zoom call that included the three arbitrators, counsel for the parties and the FINRA case manager.

47. In the course of the call VCI made an application to stay the arbitration to bring the instant action.

48. Boustead consented to the stay.

49. The arbitration panel issued a decision staying the arbitration pending the outcome of the instant action.

50. No discovery has taken place by the parties in the FINRA Arbitration.

51. No discovery has been served by any party upon the other.

## CAUSES OF ACTION

### COUNT I
**(For a declaratory judgment)**

52. VCI repeats and realleges paragraphs above as though fully set forth herein.

53. The Underwriting Agreement, which is the governing agreement between the parties as to the ROFR and all disputes arising therefrom, contractually requires that any such dispute be brought exclusively in either this Court or the New York Supreme Court, New York County.

54. The Underwriting Agreement superseded the Engagement Letter as to all subject matters addressed therein, including the ROFR, and its mandatory forum selection clause that precludes Boustead from pursuing its claims anywhere other than a court of competent jurisdiction in New York County.

55. The Underwriting Agreement is a valid and binding agreement with Boustead and supersedes any right that Boustead may have had to arbitrate under the FINRA Code of Arbitration Procedure.

56. Boustead refused and continues to refuse to withdraw the FINRA Arbitration.

57.    It is well-settled law that only a court can determine whether parties agreed to arbitrate and, under the terms of the VCI's contracts with Boustead, this Court is the parties' exclusive chosen forum.

58.    As a matter of law, unless Boustead is enjoined from pursuing its claims in the FINRA Arbitration, VCI will suffer irreparable harm because it will (i) be deprived of its right to select the forum in which it expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense of defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings, even though VCI is not legally compelled to arbitrate Boustead's claims. Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

59.    Declaratory relief from this Court will resolve this controversy.

60.    As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties and liabilities of the parties. VCI therefore requests a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure declaring that the Underwriting Agreement governs the parties' dispute and that, pursuant to the venue and forum selection clauses in the Underwriting Agreement, Boustead must bring its claims, if at all, in court, specifically either this Court or before the New York Supreme Court, New York County.

**COUNT II**
**(For injunctive relief)**

61.    VCI repeats and realleges paragraphs above as though fully set forth herein.

62.    Boustead has asserted claims for damages against VCI in the FINRA Arbitration When the governing agreement does not permit the instant dispute to be filed before FINRA, rather, it must be filed before a court of competent jurisdiction in New York, New York.

9

63.     As a matter of law, unless Boustead is preliminary and permanently enjoined from pursuing its claims in the FINRA Arbitration, VCI will suffer irreparable harm because it will (i) be deprived of its right to select the forum in which it expressly agreed to resolve disputes, (ii) be forced to arbitrate a dispute it has not agreed to arbitrate, and (iii) be forced to incur the substantial time and expense of defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings, even though VCI is not legally compelled to arbitrate Boustead's claims. Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

64.     The balance of equities and public interest would be served by enjoining Boustead from pursuing its claims against VCI in the FINRA Arbitration because the parties' agreement precludes arbitration of this dispute, and as such, this factor weighs heavily in favor of an injunction.

/

/

/

/

/

/

/

/

/

/

/

/[intentionally blank]

## PRAYER FOR RELIEF

**WHEREFORE**, VCI respectfully requests that this Court enter an order:

1.      Declaring: (a) that the Underwriting Agreement is the governing agreement between the parties as it relates to the substantive allegations contained in the FINRA Arbitration; and (b) declaring pursuant to the Underwriting Agreement FINRA is not a permitted forum to resolve the dispute between VCI and Boustead pursuant to the Underwriting Agreement, rather, it is only a court of competent jurisdiction in New York County, New York;

2.      Preliminarily and permanently enjoining Boustead from pursuing any claims against VCI in the FINRA Arbitration; and

3.      Granting such other relief as may be just and proper.

Dated: June 18, 2026

Respectfully submitted,

**THE LAW OFFICES OF BARRY M. BORDETSKY**

By:      /s/ Barry M. Bordetsky
         Barry M. Bordetsky (BB4218)
         Counsel for Plaintiff
         570 Lexington Avenue, 24th Floor
         New York, New York 10022
         Tel. No. 212-688-0008
         Email: barry@bordetskylaw.com